Wilson v. City of Philadelphia Mr. Ellis. Good morning. Good morning. You want to save time for rebuttal? I do. I'd like to reserve three minutes of rebuttal time. How much, sir? Three. Very good. Go ahead, Mr. Ellis. Okay. Is that okay? I had thought you said 30 minutes. Oh, okay. Okay. No, no. Okay. No, no. Three. Okay. I got a little bit startled there. Sure. May it please the court, my name is Paul Ellis. I represent the appellant in this case, Harold Wilson. Harold Wilson spent over 15 years in prison. I think we know the fact, Mr. Ellis. What I'd like to know is why we should either affirm or reverse the decision that Judge O'Neill made when he dismissed the 60B motion that was made by Mr. Wilson. Certainly. There are several reasons, and there's no better place to start than the conduct of Mr. Wilson's former lawyer, Richard Austriak. He's actually the reason why we're here, essentially. Well, he picked him, didn't he? He was appointed eventually by the court, I think. Was it Mr. Austriak's time, and again, confirmed as Mr. Wilson's attorney by Mr. Wilson? Well, certainly. Yeah. I mean, I'm pretty sure that he didn't know Mr. Austriak prior to the commencement. I don't know whether he knew him or not, but there was a whole chronology, which I have here. Sure. Of Mr. Austriak disappointing Mr. Wilson or promising Mr. Wilson time and time again that he was going to take care of matters. Right. And as it turned out, as recently as October 7, 2006, he told Mr. Wilson he was still working on his case. This is after the district court had dismissed the case without prejudice for lack of prosecution. That is correct. And Mr. Wilson, who had checked with other people and who was told that he ought to check with the Bar Association without Mr. Austriak, nevertheless, he still stayed with Mr. Austriak, didn't he? He didn't know. He didn't find out until several months later. The representation that you just made reference to happened in 2006. He didn't actually find out about the dismissal of his case until the following May of 2007. And I would add that in the controlling cases apply great significance to his diligence. In fact, in my brief, I cite Carter. The facts in Carter are identical to the one in this case. In that case, the plaintiff's lawyer made representations repeatedly to the client and to the court that there were various cleanings that would be filed. It wasn't done. And that's what happened in this case as well. So Carter, which eventually resulted in a dismissal, the Third Circuit vacated, either vacated or reversed, the district court. And just like the litigant in Carter, Mr. Wilson was also diligent and made availed himself of the 60B remedy. We have to look at prejudice, do we not, Mr. Ellis? And it was dismissed in May, but the statute of limitations on your client's Section 1983 and 1985 claims did not run until November of that year, correct? Well, I certainly wouldn't concede that point. That's a central issue, and I understand that appellees have spent a significant amount of time in their brief. When do you think it ran? Well, it depends. First of all, when do you think the statute, Judge Hardiman has just made the statement that the statute of limitations didn't run until about five months after it was dismissed in November. You say, well, that's what's at issue here. And I'm asking you, when do you contend the statute ran? Well, in order for me to accurately answer the question, I have to point to the Smith v. Hope case, which interprets the Heck case of the Supreme Court. And my answer, the short version, depends on the causes of action that you're looking at. Well, that's why I identified the cause of action. The causes of action accrue under Sections 1983 and 1985 of Title 42 U.S.C. Right, right. And appellees cite the Supreme Court Heck case to stand for the proposition. It doesn't accrue when the case was dismissed. Right, right, exactly. There's only one. Exactly, right. That was the moment that he could file a claim. Right. So that's when it starts. Right. So you add two years. Right. They cite November 15th, I think, of 2005. But what the Smith v. Hope case, which interprets Heck, says is that that's only true for causes of action that relate to a conviction or, as you say, relate to, if it poses a threat, that there will be two parallel courses of litigation. And one second, I cannot. We may be getting off message here. I understand he was acquitted on November 15th of 2005. Is that accurate? That's correct. That's correct. But that really is when his cause of action accrued. That's when he could file a claim under Humphreys v. Heck. Right. Except that the cause of action, it depends on the cause of action. I just want to read you. This is a 1983 cause of action. Right, right. But he also alleged various batson violations. I want you to keep in mind. Remember, this whole retrial, this whole case resurfaced or reoriginated because of the original batson violations. I think the tenor of Judge Hardiman's question was that the claim was still viable when Judge Smith, was it Smith? O'Neill. O'Neill, I'm sorry. Judge O'Neill denied the motion to reopen. Is that correct? In fact, he had four or five months to go. I would respectfully suggest to the court that I understand that that's what Heck says. Okay. But the case that they cited, Smith v. Holt, which interprets Heck, says that it depends on the cause of action. And as an example, what they say is, if you, an allegedly unreasonable search may lie, even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the Ninth Section 1983, plaintiff still standing conviction. What they're saying is that the cause of action, even if successful, has to be such that it doesn't necessarily imply that the plaintiff's conviction was unlawful. So I don't understand something. Judge Hardiman asked what I thought was a fairly simple factual question. He said there were about five months that existed after the 6dB motion was denied. He said, and you, you have been telling us about a cause of action which, as Judge Fuente has pointed out, it had to accrue at, on November the 15th, 2005. That leaves 2007, November the 14th, 2007. Right. As the date on which it was barred. That's about five months after the 6dB motion. And the question was, the pertinent question, how was he prejudiced? Well, Mr. Wilson was prejudiced because, number one, he was not aware that the statute of limitations had, remember, he was pro se at that point. So he, just like he cites in his original complaint and motion to reopen, was under the impression that statute of limitations had expired. He states so in his affirmant. Now, we. Is there any case support for the proposition that the statute of limitations expires when the plaintiff thinks it expires? There's, there's case law that's, well, no, no. But there's case law that, that grants this court broad power to give an appellant, in that instance, relief when he's subject to the things that his former lawyer did. What about, what about, let's move for a minute to 1986. Isn't it the case that you, that you have a better argument on the 1986 claim? Because the statute of limitations, by my calculation, ran in November of 2006, i.e., before the Rule 6dB denial. Right. Yeah, I would agree with that. Okay. I would agree with that. But we. I guess what I'm suggesting is, is, well, I mean, you're, you're certainly free to, to continue to disagree with, with my suggestion that, that there's no prejudice on the other two. But perhaps you could address for a minute the 1986 claim and, and tell us whether that's different than the 1983 and 1985 claims. If it doesn't, your 1936 claim, isn't that dependent on the 1985 claim? You've got a 1985 claim for conspiracy and you've got the 1986 claim. And if there is no 1985 claim, how can you have a 1986 claim? Well, there, there is overlap between the two. I. I didn't hear your answer. I said there is, I said I understand the connection between the two. And again, I mean, you know, I just met Mr. Wilson last year, so I don't, I don't, I don't profess to have his, his, his, you know, entire breadth of what happened to him before he got released because he filed this, he filed this case before he was. Can I ask you a question because your time is running out? Sure. Your client's case was rejected twice. It was rejected by Judge O'Neill because his lawyer had not filed the status report. Right. His lawyer did not do what Judge O'Neill wanted him to do. Sure. Is that correct? That's correct. So would you say that he sanctioned the, the case or the lawyer by dismissing it? In other words, maybe this was a Rule 41 sanction because the lawyer failed to follow the judge's order. The order was give me a status report because you've got 12 e-motions pending. Well, sure, but then he. You're familiar with all that. I am, I am, but then. Right. But he didn't give him the order. So the judge, and then the, the lawyer said, I want to file an amended complaint. Right. He didn't do that either. Right. So you know what happened. Judge O'Neill dismissed the case. Right. Now, that, to me, it's a Rule 41 sanction because the lawyer didn't follow what the judge wanted him to do. Are you with me so far? I am. Then you end up with your client filing a motion to reopen. And once again, the judge said, shouldn't visit the sins of the lawyer on the defendants. Right. Is that correct? Dismissed the case. Right. My point is that it seems to me we have jurisprudence here which says that there are polis factors that the judge has to take into account. Right. Whenever a case is dismissed under these circumstances. Right. As well as the Dunbar notification requirement. Well, Dunbar is very different. Right. Is that your argument? I mean, is that, is the statute of limitations a big issue here or is it that the dismissals were proper or not? The statute of limitations is not a big issue for us. We didn't focus on that in our brief. The statute of limitations, it wouldn't matter if the first dismissal was improper. Right. I mean, right. That's our entire argument. Why wasn't it proper? Why didn't Judge O'Neill properly dismiss the case when there was no action by the attorney? Because he didn't take the attorney's conduct into consideration. He didn't address any of the polis factors. He didn't engage in the Dunbar requirement. The recent case of DeFrancisco in March of 2006, which came down three months before. What's the last polis factor? The sixth factor. The sixth factor? I believe it's meritoriousness of the claim. If it was meritorious. Right. And DeFrancisco interprets that sixth polis factor and says, if the complainant states a claim upon which relief can be granted, we consider the claim to be meritorious. If the court had actually applied the polis factors, Mr. Wilson wins hands down. And then when you combine that. Well, I wouldn't say that. But the question is, shouldn't they have been analyzed? They should have been analyzed. The record is clear that they weren't. Judge Garth just asked you about the merits. I don't know that he wins hands down. But the point is that the merits were not analyzed. Right. What is the standard of review for the grant or denial of the 60B motion? Abuse of discretion. And you're saying that Judge O'Neill abused his discretion then when he denied the 60B motion. Is that so? That's exactly so. And that's the position that we take in our brief. Did he give reasons for denial of the 60B motion? He did. He pointed to the conduct of his lawyer. And this court has made it clear over and over again, starting, you know, this court used very strong language in Dunbar, and that was back in 1987, talking about how the professional derelictions were becoming an increasing trend, an increasing problem. What about the Link case and the Titus case? Right. Bauchner and Carter, which are the cases that are factually identical to ours and which control this case, distinguish Link. In fact, one of the main distinctions that they make is that the plaintiff and Link didn't avail themselves of the corrective remedy of 60B. My client did. So there's a clear distinction between Link and our cases, Bauchner and Carter, and DeFrancisco reinforces that from March of 2006. Mr. Ellis, your time is up. Okay. Still have three minutes to rebuttal, right? Okay. Not 30. Right. Okay. Ms. Diffily, is that the correct pronunciation? That one. Good morning. May it please the Court, my name is Kelly Diffily, and I, along with my colleague Ronald Eisenberg from the DA's office, represent the appellees in this case. I will be, with the Court's permission, arguing the 60B motion for the first 12 minutes, and Mr. Eisenberg, if necessary, will answer questions about alternative grounds for affirmance. Could you also touch, it seems to me there are two events that should be considered here, and the first one is Judge O'Neill's dismissal based on counsel's failure to abide by his order without stating any essential reasons, especially the Poulos factors. Could you comment on the propriety of that dismissal? Yes. Your Honor commented about the Poulos factors. It's our position that the Poulos factors, it was unnecessary for him to apply the Poulos factors or apply the Dunbar notification procedure because those factors would only apply in a situation where you're dismissing the case with prejudice, so that essentially that that action would act as a total bar to his ability to have his case heard on the merits. If it's a Rule 41 dismissal, which is failure to abide by a court's order, whether it's with prejudice or without prejudice, isn't it a final order? In fact, I don't believe it was a final order. In fact, Judge O'Neill's order was explicitly entered without prejudice, the text of the order states that, and moreover, given the fact that the statute of limitations was well open at that point, Mr. Wilson had an additional 17 months at that point to refile his claim. It did not act as a final adjudication. Now, that was the June 2006 order. That's correct. Right? Without prejudice. That's correct. And the order that we're concerned with here is the May 2007 order in which he denied a 60B motion. Right. Of course. Right. If I could just follow up a little bit on the poolist factors, I think the entire reason behind the need to apply a poolist factor would be if someone were going to be precluded from being able to continue with their case, from having it heard on the merits, that's why you want to go through this analysis before you deprive the person of their right to have their case heard in court. However, in a situation where it's without prejudice and the statute of limitations is open for a year, an additional year and a half, there just simply isn't the reason and the necessity to go through those factors at that time. What happened with the denial of the motion to reopen then? Is that your view? I'm sorry? Denial of the motion to reopen essentially told Wilson your case is over. But, in fact, it didn't. And if you looked at the text of Judge O'Neill's order, it almost acts as a roadmap informing Mr. Wilson that your case is still open. And the reason it does that is because the reasoning of the June 2007 order states that he could have revived his case after June 2006 when he had dismissed it. The only possible way that he could have revived his case in June of 2006 would have been if the statute of limitation had begun, meaning the claim had accrued at acquittal and not at the grant of the new trial. That's when he had dismissed it the first time. That's correct. Could have revived it after that. Correct. And the only way that when Judge O'Neill is telling Wilson in 2007, you could have revived it in 2006, the only way that that makes sense is if the claim accrued only at the acquittal and not at the new trial. And if, in fact, the claim accrued at the acquittal, then it was also open still at that time when he was denying the 60B motion and he had this additional five months. The section 1986 claim wasn't available any longer. The statute had run on that one, correct? That is correct. So why is it Wilson prejudice then? There are plenty of alternative grounds for dismissing that 1986 claim so he suffered no additional prejudice. First of all, you need three actors for a 1986 claim. Mr. Wilson's conspiracy claim essentially urges that now Justice Castile and McMahon somehow conspired to wrongfully choose juries. And his 1986 claim then says that Justice O'Neill or D.A. Castile at the time did not intervene to prevent that conspiracy. It simply doesn't make sense that D.A. Well, that's an argument for summary judgment. That's not an argument, it seems to me, that allows you to shut the courthouse doors in his face. Well, I think if we can establish that there was an alternative ground for affirmance that would have precluded him from being able to proceed on his claim, this court can say, well, it would be futile to send the case back. For example, if Your Honor determined that the 1986 claim could survive and should have been reopened, it would be futile to send it back to the district court because he simply doesn't say that 1986 claim because you need three actors. Let me ask you about the McCaskill case. That's from our circuit, 1987. It's 834 Fed Second, page 71. In that case, we held that a district court must make explicit findings regarding the Poulos factors whenever rendering judgment by default or dismissal or in declining to reopen such judgment. Doesn't that make clear that even in this case, when the judge denied the motion to reopen, the Poulos factors had to be considered? Your Honor, I haven't read that specific case, but I certainly have read cases. I've read Poulos itself and the cases applying Poulos. And I think it is the case law bears out that the Poulos factors are only appropriate if you are foreclosing someone from being able to litigate his case. Let me ask you something. There simply isn't the need or the necessity to go through those factors if someone can simply walk back into court and refile his claim tomorrow. Do you think Wilson walked out of that session with Judge O'Neill thinking, well, now I can go file my case? Did Wilson? Yes. I don't think Mr. Wilson did that. But essentially then what this case boils down to is the abandonment is not the issue. It boils down to a pro se litigant who essentially misapprehended that the statute of limitations was open at a time where he was well aware. Now I'm talking about June 2007. He was well aware that he was pro se, that he was no longer represented by Mr. Austriac, and he very well may have misapprehended the statute of limitations. In fact, the fact that his complaint states that he believed that the statute of limitation began at due trial, we're fairly certain that that's what he thought, but that's not a reason for this court, or it's not a reason for Judge O'Neill to have reopened the case, and it's certainly not a reason for the court's jurors. Let me interrupt you for just a moment. You've been asked questions about Rule 41 and about Poulos. Am I not correct in saying that when there's an involuntary dismissal under Rule 41, it is always to be, as an adjudication on the merits, in all cases, it is not a dismissal without prejudice. It is a dismissal with prejudice. Isn't that what Rule 41 says? I don't understand how it could be a dismissal with prejudice if someone can then turn around and walk into court and refile the next day. It's a new case. I mean, it seems to me you may be making a fundamental error, or perhaps it's a nomenclature thing, but you're saying the case was alive. The case is dead, but he has the opportunity, if the statute of limitations has not run, to file a new case. But that doesn't mean that in Case 1 that's not a final order closing that case. He'd have to file a new case. It would be given a new civil docket number, et cetera. Isn't that right? I think that is perhaps correct. However, the fact that the person can – Mr. Wilson would have had a chance to fully assert his claim, fully have his case heard on the merits. Because the statute hadn't run. Because the statute hadn't. On two of the three claims, it had run on the 1986 claim. It had run on the 1986 claim, but if I can just follow up on that question, in addition to the you need three parties, we have other independent reasons, which is that claim is almost certainly barred by prosecutorial immunity, which if you have questions about that, my colleague will be getting into that. And moreover, at the time the 60B order is denied, that 1986 claim is fully duplicative. And I think Judge Garth got to this before. It's fully duplicative of the other claims that were being asserted. And so he suffers no additional harm at that time in June 2007 by his inability to have that claim heard. It seems he suffers the ultimate harm. It's duplicative of two claims that he's barred from bringing, but he lives to fight another day on the one claim where the statute, where he suffers prejudice because of the running of the statute. If I could beg to differ. Now, at this juncture in time, we know that he's barred by the statute of limitations, but we need to look at what the situation was in June of 2007. In June of 2007, he was not barred from asserting those two other claims. Judge Artiman was correct that you have to bring a whole new case because the effect of a dismissal under Rule 41 is to close the case. There is no case. You'd have to bring a whole new case. Right. Right? So it's a final, appealable decision. Right. Respectfully. If it's a Rule 41, it says that it operates as an adjudication on the merits. That's what Rule 41 says. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. And unless the dismissal order states otherwise, a dismissal under this subsection B and any dismissal not under this rule operates as an adjudication on the merits. That's what Rule 41 says. Now, Judge O'Neill never referred to Rule 41. Didn't have to. He dismissed it in June without prejudice, which doesn't come under this. And then he had a different rule that he denied. It was a Rule 6dB, which is discretionary denial. If it's your Honor's position that he needed to apply the poorest factors in June of 2007, which I understand is that question, that he should have applied it then, not in 2006 because it could have been reopened in 2006, then I think you potentially could get into the question whether or not there are alternative grounds for affirmance. And I think that it's clear under the case law that, in fact, it would be futile to reopen. It would have been futile for him to reopen the case because he can't state a cognizable claim. And I'm going to let my colleague get into the reasons why that is. But you're inviting us to get into the merits of the case. Well, I'm inviting you to apply a pretty broad-brush application of prosecutorial immunity and our argument that these allegations were, in fact, against the state and not against the municipality. So this doesn't require you to speak into the microphone. I didn't hear that last statement of yours. It's our position that it's not going to necessitate a claim-by-claim analysis of the merits. Instead, the broad-brush doctrines of prosecutorial immunity and our argument that this is, in fact, a claim against the state and not against the municipality, would preclude him from filing a 1983 claim. And that doesn't require you to get into the true merits of this case. I think you can apply those. But, again, I want to let my colleague talk to that if you have questions about that specifically. Do Your Honors have any specific questions about the statute of limitations under HECC? Your colleague is going to address Dunbar, I guess. He's going to talk about prosecutorial immunity. Okay. Ms. Tiffoli, thank you very much. Thank you very much. Mr. Eisenberg. May it please the Court, Ronald Eisenberg for the District Attorney Defendants. The reason for considering these other issues is merely on the principle that the lower court should be affirmed for any reason that supports its order. And if, in fact, there was a failure to state a claim because, for example, of absolute immunity, it would be appropriate now to uphold the judge's action. But Judge O'Neill never addressed prosecutorial immunity. He did not, Your Honor. And that's why I say that the lower court can be affirmed for any reason, even those that he did not consider. But this is a garden variety remand, isn't it? I mean, when a district judge throws someone out of court based on a procedural default, whether it's a time bar or misconduct, whether it's 60 or 41, why not just go back down there and you can file a Rule 12 motion arguing prosecutorial immunity? Well, we certainly could. But since we are here and since the principle exists that a lower court could be affirmed for any reason, I think it's not inappropriate to consider reasons where they are apparent. Shouldn't that reason be something that was brought before the district court, not something that might theoretically have been brought before the district court? Well, it was brought before the district court. The district court didn't reach it. There were motions to dismiss filed. The district court didn't reach those motions to dismiss because it dismissed on these other grounds. But district judges know. It wasn't that long ago. I remember it. It's not that difficult to say I'm throwing out of court because your case is time barred. And in case I'm wrong on that, taking my chances with this court, I make a couple of alternative holdings that you're wrong on the merits to. He did none of that here. He certainly could have done that. The point is simply that the principle exists. It's not invented for purposes of this argument or for today that a lower court can be affirmed for other reasons that support his ruling, even if he didn't address those, even if he didn't consider those. What you're saying is that we're spinning our wheels because no matter what happens, even if it goes back, it's going to go down the drain. Exactly, Judge Gard. And his wheels. Yes, your wheels and his. I haven't been a district court judge as recently as Judge Hardeman. It goes back a long, long time. But the principle that you're speaking about now is why are you going to inflict this both upon Mr. Wilson and upon the district court judge when it's meritless? That's what you're saying. Yes. That's actually one of the poorest factors, isn't it? Well, your Honor, at this point, given that we are here on appeal, the court has a larger power, I think. I understand your request, but you know one of the problems with it is Mr. Ellis is not addressing immunity. You're addressing it for the first time. You're asking us, you're inviting us to make a ruling based on immunity, but he hasn't briefed it. He had no idea that you were going to present it. So, I mean, in a sense of fairness, doesn't it make sense to have the district court address the issue? He has had an idea since we filed that brief many, many months ago. There was no reply brief. There was no argument today on that issue. If it weren't an open and shut question, in our view, something that goes to the core of the prosecutor's duties, which is how do you pick juries, how do you exercise that function, it would make sense to let this go back. You raised this issue in your responsive brief. Yes, Your Honor. And as you point out, there was no reply brief. Correct. So whatever the possibility was of contesting your position, it was not contested. Correct. Thank you, Your Honor. Thank you, Mr. Eisenberg. Mr. Ellis? Yes, sir. Why didn't you reply to that portion of your adversary's brief, which points out that this can never go beyond another hearing in the district court? There's two reasons, Your Honor. Number one, the sixth prong of POLIS, which is making an assessment about the meritoriousness, is not the equivalent of relitigating and retrying the entire case. That's not how that prong is supposed to be interpreted. It means whether or not you dismiss it, does the case have any merit? Right. Well, making an assessment about whether a case has merit doesn't mean litigating the entire case to determine whether or not it has merit. And you didn't think it was necessary to answer the argument that there was qualified immunity? No, no. Mr. Wilson was still at square one. This case is, you know, first of all, there's no such thing as just blanket immunity. There's exceptions to the immunity statute. There's been no true discovery in this case. This case is at a very early posture, all things considered. So, no, I thought that that was extremely premature, and I wasn't going to fall into the trap of trying to litigate the immunity issue when we're here on a procedural defect, and we're also here because of the outrageous actions of this former counsel. I'm just curious. Knowing this case as intimately as you do know it, is there an answer that you have to the qualified immunity? Isn't he right that the defendants have a right to qualified immunity? There are some qualified immunity statutes floating out there. What do you mean, factors? Who are the defendants? No, no, no, statutes. I'm sorry. Statutes. Who are the defendants in this case? The city of Philadelphia, the district attorney's office, district attorney Lynn Abraham, Jack McMahon, Ron Castile. They were prosecutors. One of them, a couple of them. One of them is the, yeah. The actual. Don't they have qualified immunity? Sure. I mean, that doesn't mean absolute immunity. I mean, we haven't had a chance. There's been no opportunity in this case to actually litigate that. There's a lot of facts that we don't know. So at a minimum, it's premature. We can't just say that just because he filed a complaint against some people who appear to have qualified immunity that automatically his case gets thrown out, particularly in this tribunal where we're talking about procedural defects based on attorney malfeasance. You know, I was definitely in her argument. I'm sorry. You want to finish up? Sure, sure. I was definitely in her argument, attempted to get this court to draw a distinction between dismissals with or without prejudice. But when a case is faced with a dismissal, there's only one person that actually really knows about it, and that's the malfeasance attorney. That's why Dunbar has the notification requirement. And that's why DeFrancisco, which is a very recent case, says that in the event of a dismissal, then it has to be notified and the post-factors have to be taken into consideration. And I also wanted to just simply point out that this case for Mr. Wilson is also right for equitable tolling under Seitzinger. All that was required under Seitzinger was that there was affirmative misrepresentations to the client. This court actually says that in the cases, in a narrow line of cases. I'm going to have to stop you pretty soon. Just finish your sentence because we have to move on. Oh, sure, sure, sure. Last sentence. Sorry. And I quote, when you have affirmative misrepresentations to the client about the very following issue, rise above the garden variety standard, that puts the case within a narrow line of cases which warrant equitable tolling. Here we have a case where the lawyer not only misrepresented to his client, but the court as well, at a time when his license wasn't even active. Mr. Wilson deserves equitable tolling. Are you pro bono counsel or are you retained counsel? I'm pro bono. Okay. Thank you very much. Thank you very much. Thank you, counsel. Very interesting arguments. We will take the case under advisement. Thank you. Congratulations. Thank you.